IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LAMARCUS JAMAINE HOWARD, | ) | |
| AIS #249423, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:17-cv-479-ECM-WC |
| | ) | [wo] |
| | ) | |
| SGT. RANDOLPH, | ) | |
| | ) | |
| Defendant. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.    **INTRODUCTION**[1]

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Lamarcus

Jamaine Howard, a state inmate.  In this complaint, Howard challenges the constitutionality

of force used against him on June 14, 2017 by Sgt. Clevon Randolph in the shift office at

Bullock Correctional Facility.[2]  Howard sues the defendant in his individual and official

capacities and seeks monetary damages, including future medical expenses, for the alleged

violation of his constitutional rights.  Doc. 1 at 5.

The defendant filed an answer, special report and supporting evidentiary materials,

including affidavits, certified prison documents and medical records, addressing Howard's

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2]Although Howard references the possibility of filing an amendment to the complaint "to include other defendants" in addition to Sgt. Randolph, Doc. 1 at 3, he did not amend the complaint.  Thus, the sole defendant in this case is Sgt. Clevon Randolph.

claim for relief.  In these documents, the defendant denies he acted in violation of Howard's constitutional rights.  After review of the defendant's special report, the court entered an order directing Howard to file a response to the report, including affidavits or statements made under penalty of perjury and other evidentiary materials.  Doc. 16 at 2.  The order specifically cautioned Howard that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for Plaintiff to file a response] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. 16 at 3 (emphasis in original).  Howard filed an unsworn response to the defendant's report on December 6, 2017.  Doc. 17. [3]  Pursuant to the order requiring a response from Howard to the defendant's special report, the court deems it appropriate to treat such report as a motion for summary judgment.

Upon consideration of the defendant's motion for summary judgment, the evidentiary materials filed in support thereof, and the sworn complaint, the court concludes that the defendant's motion for summary judgment is due to be denied as to the plaintiff's allegation of excessive force lodged against defendant Randolph in his individual capacity

---

[3] The court declines to consider Howard's response to the defendant's report, Doc. 17, because this response is not a sworn statement nor is it signed with an averment that it was made under penalty of perjury.  *See* 28 U.S.C. § 1746; *Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555, *2 (11th Cir. Jan. 20, 2007) (noting that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment."); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that "the court may not consider [the pro se inmate plaintiff's unsworn statement] in determining the propriety of summary judgment.").

2

and granted with respect to his request for monetary damages from the defendant in his official capacity.

## II.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotations omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Beard v. Banks*, 548 U.S. 521, 529 (2006) (holding that the court "must examine the record to see whether the [party moving for summary judgment], in depositions, answers to interrogatories, admissions, affidavits and the like, has demonstrated the absence of a genuine [dispute] of material fact, and his entitlement to judgment as a matter of law.") (internal quotations and citations omitted); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving

party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

At this juncture, the court "must determine whether [the plaintiff], who bears the burden of persuasion has by affidavits or as otherwise provided in Rule 56 . . . set forth specific facts showing that there is a genuine [dispute of material fact] for trial." *Beard*, 521 U.S. at 529 (internal quotations and citations omitted); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). However, this court must also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the plaintiff produces evidence that would allow a reasonable fact-finder to return a verdict in his favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). However, disputes involving material

facts are relevant and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011).

"[T]he judge's function [at the summary judgment stage] is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In addition, when determining whether summary judgment is appropriate, the law requires a court to accept as true "statements in [the plaintiff's] verified complaint, sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response." *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."); *Anderson*, 477 U.S. at 255 (holding that when deciding whether to grant summary judgment a court must draw "all justifiable inferences in [the plaintiff's] favor."). "That [a plaintiff's] evidence consists mainly of his own testimony in his verified complaint, sworn response, and sworn affidavit does not preclude a finding that a genuine

dispute of material fact exists.  'As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning it relates facts that could not have possibly been observed or events that are contrary to the laws of nature.'"  *Sears*, 922 F.3d at 1208 (quoting *Feliciano*, 707 F.3d at 1253.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After this review, the court finds that Howard, through the submission of his sworn complaint, has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his excessive force claim presented against defendant Randolph in his individual capacity for monetary damages.[4]  The defendant, however, is entitled to summary judgment on Howard's claim for monetary damages lodged against him in his official capacity.

## III.   DISCUSSION

### A.   Sovereign Immunity

To the extent Howard seeks monetary damages from defendant Randolph in his official capacity, the defendant is entitled to sovereign immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by
> private parties against States and their agencies [or employees]. There are

---

[4]"Even if [the plaintiff's] sworn statements turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact about the amount of force [the officer] used and whether [the officer] applied it in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sears*, 922 F.3d at 1209 (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) and *Skrtich v. Thornton,* 280 F.3d 1295, 1303 (11th Cir. 2002)).

> two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit [via waiver of immunity] must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotations and citations omitted).  Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.   "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, the defendant is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity.  *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B.        Relevant Facts on Individual Capacity Claim[5]

On June 14, 2017, officers Brandon Redd and McElwayne Broadnax approached Howard "near the chow hall" and thereafter escorted him to the shift office "for no good reason." Doc. 1 at 3.  Howard further provides:

> There — I was approached by Sgt. Randolph, who — then instructed me to shave.  As I then attempted to do so, Sgt. Randolph, without notice — struc[k] me violently, to my face, with the palm of his right hand.  He then instructed me to put my hand down.  As I attempted to explain to said Sgt. Randolph that I'm only trying to do as he asked — and shave.  Again, and without notice — he violently slapped me once more.  Immediately thereafter, Officer Redd and Officer Broadnax and Sgt. Randolph, all, violently — took me to the floor and begin punching me in my face area.  While on the floor and begging the officers to stop, I then saw the shift officer's bathroom door[] come open, and then appeared Officer Giles — who also stood there — but did nothing to assist me, or to simply stop the others from attacking and assaulting me in [a] violent manner.

Doc. 1 at 3.

A body chart prepared on Howard by Nurse Katherine Taylor immediately after the above described altercation indicated a one-inch laceration to the right side of Howard's head, "[r]edness to forehead" and a "[b]ruised [left] eye." Doc. 15-3 at 6.  The facility's physician, Dr. Siddiq, sutured the open head wound and medical personnel then released Howard to return to his living area. Doc. 15-3 at 6.  Howard states he is "still experiencing slight hearing and visual impairment [as a result of the assault].  And mentally, is

---

[5]The facts are gleaned from the complaint, and at this stage of the proceedings, such are viewed in a light most favorable to the plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (When addressing a party's motion for summary judgment, all evidence "must be viewed in the light most favorable to the opposing party."); *Anderson*, 477 U.S. at 255 (In ruling on a summary judgment motion, "all justifiable inferences [from the evidence] are due to be drawn in [the non-movant's] favor.").

experiencing some mental anguish and unwelcomed fear of the officers involved."  Doc. 1 at 3.

Howard challenges the constitutionality of the force used against him by Sgt. Randolph.  In sum, he maintains there was no need for the use of force as he was simply trying to comply with orders issued to him by Randolph, and, as such, the use of force against him was excessive.

## C.     Excessive Force

(i)   Qualified Immunity.  With respect to Howard's excessive force claim lodged against the defendant in his individual capacity, the defendant argues he is entitled to qualified immunity.  Doc. 15 at 5.  Qualified immunity is an affirmative defense, the applicability of which is a "question of law for the court to determine."  *Stone v. Peacock*, 968 F.2d 1163, 1165 (11th Cir. 1992) (quoting *Ansley v. Heinrich*, 925 F.2d 1339, 1341 (11th Cir. 1991)) (internal quotations omitted).[6]

> Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.  *Skop* [*v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007)].  To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established.  *Fennell* [*v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)].  In Eighth Amendment

[6]The defendant also asserts the defense of state agent immunity to Howard's claim that the challenged use of force violated his constitutional rights.  Doc. 15 at 5.  As with qualified immunity, state agent immunity "is a question of law to be decided by the trial court."  *Suttles v. Roy*, 75 So.3d 90, 99 (Ala. 2010) (quoting *Ex parte Sawyer*, 984 So. 2d 1100, 1106–07 (Ala. 2007)) (internal quotations and citation omitted).  Under Alabama law, a state officer is immune from state tort liability "arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  *Ala. Code* § 6–5–338(a).  However, in the complaint, Howard presents only an excessive force claim violative of his constitutional rights and does not raise any related state tort claim.  Thus, state agent immunity is not a defense available to the claim raised in this case.

excessive force cases, however, "the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002).

*Bowden v. Stokely*, 576 F. App'x 951, 954–55 (11th Cir. 2014). "While . . . there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate. *See Skrtich*, 280 F.3d at 1301." *Bowden*, 576 F. App'x at 956. Accordingly, this court will consider whether the plaintiff's allegations that Sgt. Randolph maliciously and sadistically used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

(ii)   The Challenged Use of Force.   Claims of excessive force by correctional officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and

10

it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry.  [*Hudson*, 503 U.S.] at 7, 112 S.Ct. 995 (opinion of the Court).  "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation."  *Ibid.* (quoting *Whitley [v. Albers*, 475 U.S. 312, 321 (1986))].   The extent of injury may also provide some indication of the amount of force applied.

*Wilkins*, 559 U.S. at 37.  "The relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover [if ultimately successful]."  *Id.* at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm."  *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Hudson*, [503 U.S.] at 7–8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300–01; *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (holding that, in determining whether officers used force maliciously and sadistically, a court must "look at the need for the application of force; the relationship between the need

and the amount of force that was used; and the extent of the injury inflicted upon the

prisoner.  Additionally, [a court must consider] the extent of the threat to the safety of staff

and inmates, as reasonably perceived by the responsible officials on the basis of the facts

known to them, and any efforts made to temper the severity of a forceful response.  Not

only that, but [a court] must also give a wide range of deference to prison officials acting

to preserve discipline and security, including when considering decisions made at the scene

of a disturbance.") (internal quotations and citations omitted).

> "When prison officials maliciously and sadistically use force to cause harm,"
> the Court recognized, "contemporary standards of decency always are
> violated . . . whether or not significant injury is evident.  Otherwise, the
> Eighth Amendment would permit any physical punishment, no matter how
> diabolic or inhuman, inflicting less than some arbitrary quantity of injury."
> *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]

*Wilkins*, 559 U.S. at 38.  Thus, in an excessive force case such as the one at hand,

> the "core judicial inquiry" is "not whether a certain quantum of injury was
> sustained, but rather whether force was applied in a good-faith effort to
> maintain or restore discipline, or maliciously and sadistically to cause harm."
> *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995
> (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous
> beating by prison guards, even without injuries requiring medical attention,
> violated a prisoner's Eighth Amendment rights)."

*Bowden*, 576 F. App'x at 953.  As such, the focus of this court in an "Eighth Amendment

inquiry [as to excessive force] is on the nature of the force applied, not on the extent of the

injury inflicted."  *Sears*, 922 F.3d at 1205 (citing *Wilkins*, 559 U.S. at 37–38).

Howard states that on June 14, 2017 defendant Randolph used excessive force

against him.  In support of this claim, Howard contends Randolph, without reason or

warning, violently struck him in the face, slammed him to the floor and continued punching him in the face.  Doc. 1 at 3.

Defendant Randolph adamantly denies Howard's claim regarding the use of excessive force.  Specifically, Randolph maintains he used only the force necessary to gain control of Howard because as Howard was leaving the shift office he "grabbed Officer Redd's shirt and attempted to push [Redd] to the wall.  Inmate Howard was placed on the floor where restraints were applied."  Doc. 15-5 at 1–2.  Thus, the defendant disputes Howard's allegation regarding the use of excessive force and maintains that at no time during the incident was more force used than necessary to subdue and gain control of Howard after he attempted to push Officer Redd into the wall.

Nevertheless, at this stage of the proceedings, the court is required to view the facts in the light most favorable to Howard and draw all reasonable inferences from those facts in his favor.  *Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014).  In that vein, Howard provides that defendant Randolph undertook actions against him — i.e., repeatedly punched him the face and slammed him to the floor — without provocation or justification and while he posed no threat to the officers or the security of the facility.  Doc. 1 at 3.  Finally, Howard contends that the challenged actions caused him to suffer various injuries including a laceration to his head, redness on his forehead, a bruised left eye, and slight hearing and visual impairments.  Doc. 1 at 3.  Like the plaintiff in *Bowden*, Howard contends "that he was the victim of an unprovoked attack in circumstances that did not [warrant the force used]."  576 F. App'x at 954.

Viewing the facts in the light most favorable to Howard as is required at this stage of the proceedings, the court finds that defendant Randolph is not entitled to qualified immunity because Howard has alleged facts sufficient to survive the defendant's motion for summary judgment regarding the excessive force claim lodged against him in his individual capacity. *See Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the need for the use of force, the nature of the force used and whether defendant Randolph acted "maliciously and sadistically" to cause harm. Under the facts set forth by Howard, a reasonable jury confronted with these facts could find that Sgt. Randolph's use of force was unreasonably disproportionate to the need for the use of force. Consequently, the defendant's motion for summary judgment with respect to the claim of excessive force presented against him in his individual capacity for monetary damages is due to be denied.

## IV.    CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendant's motion for summary judgment as to the plaintiff's claim for monetary damages lodged against him in his official capacity be GRANTED and this claim be DISMISSED with prejudice as the defendant is entitled to sovereign immunity from such damages.

2. The defendant's motion for summary judgment with respect to the plaintiff's excessive force claim lodged against him in his individual capacity for monetary damages be DENIED.

3.  This case be referred to the District Judge assigned this case for a jury trial on the plaintiff's surviving claim of excessive force lodged against the defendant for monetary damages in his individual capacity.

On or before **July 28, 2020**, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 14th day of July, 2020.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE